IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| Progressive Mountain Insurance Company,<br>　　　　Plaintiff,<br><br>vs.<br><br><br>Marcus Jackson, A&D Delivery, Inc., The Aaron's Company, Inc., and Spirit Logistics Network Inc.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO:<br><br>5:25-CV-00306 |

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW, Plaintiff, Progressive Mountain Insurance Company, by and through its undersigned counsel, complaining of the Defendants, Marcus Jackson, A&D Delivery, Inc., The Aaron's Company, Inc., and Spirit Logistics Network, Inc., and seeks a declaratory judgment from this Honorable Court as set forth below.

## PARTIES AND JURISDICTION

1.  This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

2.  Progressive Mountain Insurance Co. ("Progressive") is a corporation organized under the laws of the State of Ohio with its principal place of business in the State of Ohio.

1

3. Defendant Marcus Jackson ("Jackson") is a citizen and resident of the State of Georgia.

4. Defendant A&D Delivery, Inc. ("A&D Delivery") is a corporation organized under the laws of the State of Georgia with its principal place of business in the State of Georgia. A&D Delivery may be served with process via its Registered Agent Andre D. Spencer, 6320 Breckenridge Run, Rex, GA 30273.

5. Defendant The Aaron's Company, Inc. ("Aaron's") is a corporation organized under the laws of the State of Georgia with its principal place of business in the State of Georgia. Aaron's may be served with process via its Registered Agent, CSC of Cobb County, Inc., 192 Anderson Street SE, Ste. 125, Marietta, GA 30060.

6. Spirit Logistics Network, Inc. ("Spirit") is a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey, but is registered to transact business in the State of Georgia. Spirit may be served with process via its Registered Agent, C T Corporation, 289 S Culver Street, Lawrenceville, GA 30046.

7. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs. In further support of the amount in controversy threshold being met, the underlying personal injury action giving rise to this insurance coverage declaratory judgment action is pending before the State Court of Clayton County, Georgia and alleges that Jackson suffered severe and permanent injuries, and further, seeks punitive damages.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and proper in this Division pursuant to Local Rule 3.4, because this is the judicial district in which a substantial

part of the events or omissions giving rise to the claim occurred insofar as the accident giving rise to the controversy occurring within Monroe County, Georgia.

9. The Parties have an actual, present, adverse, and antagonistic interest insofar as Progressive is in doubt with respect to its rights and obligations under a policy of insurance, and by this claim for declaratory relief, seeks a declaration of its rights and obligations under the aforesaid insurance policy with respect to claims asserted by or against the other parties to this action.

10. All proper and antagonistic parties or all parties having any interest in the outcome and adjudication of the present controversy are before the Court.

11. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure, Rule 57, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances presently existing.

## FACTUAL BACKGROUND

### The Accident

12. On or about September 18, 2023, Jatavious Bernard Jordan ("Jordan") was operating a 2010 HIN TK (VIN: 5PVNJ8JV6L4S75137) (the "Subject Vehicle") that was owned by Penske Leasing Co., LP ("Penske") but rented by Penske to A&D Delivery or Spirit for use by A&D Delivery in connection with shipments brokered to it by Spirit when he was involved in an accident with a 2007 Toyota being operated by Jackson (the "Accident").

13. Jackson has claimed that he suffered personal injuries as a result of the Accident.

14. On July 22, 2024, Jackson filed a personal injury lawsuit alleging various causes of action in relation to the Accident in the State Court of Clayton County, Georgia, which is currently captioned *Marcus Jackson v. Jatavious Jordan, Penske Truck Leasing Co., LP, The*

*Aaron's Company, Inc., Old Republic Insurance, Co, A&D Delivery, Inc., Spirit Logistics Network, Inc., Progressive Mountain Insurance Company of Ohio, ABC Corporation, and XYZ Corporation*, Case No. 2024CV0402800552 (the "Underlying Litigation"). A true and accurate copy of the operative Complaint in connection with the Underlying Litigation is attached hereto as **Exhibit 1.**

15. Count II of the Underlying Litigation alleges "Imputed Liability" against Aaron's based upon Jordan's alleged negligent operation of the Subject Vehicle in relation to the Accident.

16. Counts III of the Underlying Litigation alleges "Negligent Hiring and Retention" against Aaron's, alleging Aaron's was negligent in the hiring and retention of Jordan as a driver for Aaron's.

17. Count IV of the Underlying Litigation alleges "Negligent Training and Supervision" against Aaron's, alleging Aaron's was negligent in the training and supervision of Jordan with respect to the operation of the Subject Vehicle or other commercial motor vehicles.

18. Counts VIX of the Underlying Litigation alleges "Negligent Selection and Hiring" against Spirit, alleging Spirit was negligent in the hiring of A&D Delivery or Jordan for the task of operating a commercial motor vehicle.

19. Count X of the Underlying Litigation alleges "Negligence of Entrustment and Liability" against Spirit, alleging Spirit was negligent in allowing A&D Delivery or Jordan to operate or the Subject Vehicle or in entrusting the Subject Vehicle to A&D Delivery or Jordan.

20. Counts II, III, IV, VIX, and X are the only Counts of the Underlying Litigation which contain causes of action against Spirit and/or Aaron's.

21. On July 26, 2024, Jackson, through his counsel, issued a 30-day time limited demand to Progressive, as A&D's insured, pursuant to *S. General Ins. Co. v. Holt,* 262 Ga. 267,

416 S.E.2d 274 (1992) (the "Holt Demand"), demanding the full policy limits of Progressive Policy No. 948610680 issued in the name of A&D Delivery, Inc. with effective dates of April 28, 2023 to April 28, 2024 and Part I—Liability to Others Limits of $1,000,00 combined single limits (the "Progressive Policy") in exchange for a limited liability release of Jordan and A&D Delivery.

22. Progressive attempted to negotiate with Jackson's counsel in order to secure a limited release for all potential additional insured(s) under the Progressive Policy, but Jackson's attorney rejected any attempt by Progressive to include any individual or entity other than Jordan and A&D Delivery as a specifically named released party, but did grant a limited release to "another individual and/or entity not specifically named in this release that is responsible for the acts and/or negligence of [Jordan and/or A&D Delivery] . . . ."

23. After investigating the facts of the Accident, Progressive determined it was in the best interests of all putative insureds under the Progressive Policy to accept Jackson's demand. Thereafter, on September 24, 2024, Jackson executed a Limited Liability Release on the foregoing terms (the "Limited Liability Release") and Progressive paid the $1,000,000 limits of liability under the Progressive Policy to Jackson care of his counsel. A true and accurate copy of the Limited Liability Release is attached hereto as **Exhibit 2.**

The Progressive Policy

24. A true and accurate copy of the Progressive Policy in effect as of the date of the Accident is attached hereto and incorporated herein by reference as **Exhibit 3**.

25. The Progressive Policy provides, in pertinent part:

**GENERAL DEFINITIONS**

The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.

6. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I—Liability To Others and/or Part II—Damage To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;

2

   (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
   (iii) no other insurance policy provides coverage for that **auto**; and
   (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II—Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:
   (i) a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or
   (ii) any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

6

5486379.4

c. Any replacement **auto** on the date **you** become the owner if:
   (i) **you** acquire the **auto** during the policy period shown on the **declarations page**;
   (ii) the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and
   (iii) no other insurance policy provides coverage for that **auto**.

   If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

7. "**Insured contract**" means:
   a. A lease of premises;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your employees** or agents; or
   f. That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your employees** to pay for **property damage** to any **auto** rented or leased to **you** or any of **your employees**.

   An "**insured contract**" does not include that part of any contract or agreement:
   1. That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or
   2. That pertains to the loan, lease or rental of an **auto** to **you** or any of **your employees**, if the **auto** is loaned, leased or rented with a driver; or
   3. That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

17. **"Temporary substitute auto"** means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

20. **"We", "us"** and **"our"** mean the company providing this insurance as shown on the **declarations page**.

21. **"You", "your"** and **"yours"** refer to the named insured shown on the **declarations page**.

## PART I—LIABILITY TO OTHERS

### INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I—LIABILITY TO OTHERS.

Coverage under this Part I, including **our** duty to defend, does not apply to:

2. **Contractual**
   Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

   However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

**LIMIT OF LIABILITY**

We will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
1. the number of premiums paid;
2. the number of **insured autos** or trailers shown on the **declarations page**;

13

3. the number of policies issued by **us**;
4. the number of vehicles or **insureds** involved in an **accident**; or
5. the number of claims or lawsuits arising out of an **accident**;

subject to the following:

1. **Coverage Required by Filings**

   If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:
   (i) **we** are required to pay any judgment entered against **you**; or
   (ii) **we** agree to settle a claim or lawsuit;
   for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

2. **Combined Bodily Injury and Property Damage Limits**

   Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each **accident**" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

26. The Progressive Policy contains an additional insured endorsement listing Spirit, which states:

9

**Additional insured endorsement**

Progressive [illegible]
PO Box 94739
Cleveland, OH 44101

1-800-444-4487
For customer service, 24 hours a day,
7 days a week

**Name of Person or Organization**

Spirit Logistics Network, Inc c/o TruNorth- Compliance
P.O Box 1863
Cedar Rapids, IA 52406

This endorsement modifies insurance provided under the commercial auto policy and any endorsements thereto affording liability coverage.

The person or organization named above is an **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to said **insured** only as a person liable for the conduct of another **insured** and then only to the extent of that liability. We also agree with **you** that insurance provided by this endorsement will be primary for any power unit specifically described on the **Declarations Page** and showing liability coverage.

**Limit of Liability**

| | |
|---|---|
| **Bodily Injury** | Not applicable |
| **Property Damage** | Not applicable |
| **Combined Liability** | $1,000,000 each **accident** |

**All other terms, limits and provisions of this policy remain unchanged.**

This endorsement applies to Policy Number: 948610680
Issued to (Name of Insured): A & D Delivery Inc
Effective date of endorsement: April 28, 2024     Policy expiration date: April 28, 2025

Form 1198 (07/16)

27. The Progressive Policy contains an MCS 90 endorsement in the name of "A&D Delivery Inc.", which states:

10

**FORM MCS-90**
**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY**
**UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Issued to <u>A & D Delivery Inc</u>
(Motor Carrier name)

of <u>6320 Breckenridge Run Rex, GA 30273</u>
(Motor Carrier state or province)

Dated at 02:18 PM on this 26th day of April, 2021
Amending Policy Number: CA 948610680 Effective Date: 04/28/2021
Name of Insurance Company: Progressive Mountain Insurance Co

Countersigned by: _____
Authorized company representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown (check only one):

[X] This insurance is primary and the company shall not be liable for amounts in excess of $750,000 for each accident.

[ ] This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 1-800-444-4487.

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs

### DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

11

5486379.4

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

### SCHEDULE OF LIMITS - PUBLIC LIABILITY

| Type of Carriage | Commodity Transported | January 1, 1985 |
|---|---|---|
| (1) For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| (2) For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| (3) For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| (4) For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

* The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

## **FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment as to Progressive Policy)**

28. Progressive restates the foregoing allegations of the Complaint not inconsistent herewith and incorporates the same herein by reference.

12

5486379.4

29. The Progressive Policy only affords coverage to Aaron's and/or Spirit in relation to the Accident and the claims alleged against each in the Underlying Litigation to the extent the Underlying Litigation alleges Aaron's and/or Spirit are vicariously liable for the alleged negligence of Jordan or A&D Delivery, and would not extend any coverage to Aaron's or Spirit for allegations of independent or direct negligence of each with respect to the Accident or the claims alleged against each in the Underlying Litigation.

30. The Progressive Policy affords no duty to defend or indemnify Aaron's or Spirit with respect to any claim arising from or relating to the Accident, including but not limited to those claims alleged in the Underlying Litigation, because the Limited Liability Release obtained by Progressive fully extends to Aaron's and Spirit as alleged omnibus insureds or additional 1198 additional insured(s) by endorsement to the Progressive Policy, and therefore Progressive has satisfied any duty it allegedly owed pursuant to the Progressive Policy by virtue of the prior exhaustion of limits under the Progressive Policy and securing of the Limited Liability Release in favor of Aaron's and Spirit.

31. Alternatively, to the extent the Limited Liability Release does not fully extend to Aaron's and Spirit for all claims alleged against each in the Underlying Litigation, the Limited Liability Release does extend to any claims premised upon vicarious liability against Aaron's and Spirit for the alleged conduct of A&D Delivery or Jordan, and therefore Progressive has satisfied any duty it allegedly owed pursuant to the Progressive Policy by virtue of the prior exhaustion of the limits under the Progressive Policy and securing the Limited Liability Release in favor of Aaron's and Spirit, and accordingly Progressive has no duty to defend or indemnify Aaron's or Spirit in relation to the Underlying Litigation.

32. Alternatively, to the extent Progressive has not already satisfied any duty it owed to Aaron's and/or Spirit under the Progressive Policy by procuring the Limited Liability Release, Progressive has no duty to defend or indemnify Aaron's or Spirit because it has previously exhausted the full limits of liability available under the Progressive Policy to secure a limited liability release in favor of other insureds under the Progressive Policy, including but not limited to Jordan and A&D Delivery.

33. Alternatively, to the extent Progressive has not already satisfied any duty it owed to Spirit under the Progressive Policy, Progressive has no duty to defend or indemnify Spirit with respect to Counts VIX and X of the Underlying Litigation insofar as Counts VIX and X allege claims of independent or direct negligence (i.e., not *respondeat superior* liability) against Spirit for which Spirit would not qualify as an "insured" entitled to Part I—Liability to Others coverage in its favor under the Progressive Policy.

34. Alternatively, to the extent Progressive has not already satisfied any duty it owed to Aaron's under the Progressive Policy, Progressive has no duty to defend or indemnify Aaron's with respect to Counts III and IV of the Underlying Litigation insofar as Counts III and IV allege claims of independent or direct negligence (i.e., not *respondeat superior* liability) against Aaron's for which Aaron's would not qualify as an "insured" entitled to Part I—Liability to Others coverage in its favor under the Progressive Policy.

35. Progressive has no duty under the MCS 90 endorsement on the Progressive Policy to defend any individual or entity against claims arising from or related to the Accident, including but not limited to those alleged in the Underlying Litigation, because under the applicable federal regulations, the MCS 90 endorsement does not create any duty upon the insurer to defend. *See, e.g. Titan Indem. Co. v. Gaitan Enters.*, 237 F.Supp.3d 343, 349 (D.Md.) ("[F]ederal courts have

consistently stated that the MCS-90 endorsement does not create a duty to defend claims which are not covered by the policy but only by the endorsement.")

36. Progressive has no duty under the MCS 90 endorsement on the Progressive Policy to indemnify Spirit or Aaron's against claims arising from or related to the Accident, including but not limited to those alleged in the Underlying Litigation, because the surety obligation imposed pursuant to the MCS 90 endorsement only extends with respect to the named motor carrier in the endorsement, which in this case is A&D Delivery. *See, e.g. Illinois Nat. Ins. Co. v. Temian*, 779 F.Supp.2d 921 (N.D. Ind. 2011) (collecting cases and other authorities holding "insured" under MCS 90 only extends to named motor carrier and does not extend to driver); . FMCSA Guidance, 49 C.F.R. 387.15 Question 15 (explaining the term "insured" as used on Form MCS-90 only refers to the "motor carrier named in the policy of insurance" and does not "require a motor carrier's insurer or surety to satisfy a judgment against any other party other than the carrier named in the endorsement.").

37. Alternatively, to the extent Progressive has any continuing duty under the Progressive Policy in relation to the Accident or the Underlying Litigation, such duty only consists of a duty to defend Aaron's in relation to the Underlying Litigation and Progressive has no duty to indemnify Aaron's in connection with any judgment entered against it, including but not limited to in relation to the Underlying Litigation.

38. For each of the foregoing reasons, Progressive is entitled to an Order holding:

   a. Progressive has no duty under the Progressive Policy to defend any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Litigation;

b. Progressive has no duty under the Progressive Policy to indemnify any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Litigation;

c. Progressive has no duty under the MCS 90 endorsement on the Progressive Policy to defend any individual or entity for claims arising from or relating to the Accident, including but not limited to those alleged in the Underlying Lawsuit;

d. Progressive has no duty under the MCS 90 endorsement on the Progressive Policy to serve as surety or otherwise satisfy any judgment entered in connection with the Accident, including but not limited to those alleged in the Underlying Lawsuit;

e. Alternatively, to the extent Progressive has any ongoing duty under the Progressive Policy in relation to the Accident or the Underlying Litigation, such duty consists solely of the duty to defend Aaron's in relation to the Underlying Lawsuit but would not create any duty upon Progressive to indemnify in favor of Aaron's.

WHEREFORE, Progressive Mountain Insurance Co. prays that the Court enter judgment in its favor as set forth herein and for such other and further relief as is just and proper.

Respectfully submitted this 17th day of July, 2025

    MOSELEY MARCINAK LAW GROUP

    */s/ Robert "Rocky" C. Rogers*
    Robert "Rocky" C. Rogers
    Georgia Bar No. 400671
    Moseley Marcinak Law Group, LLP
    P.O. Box 26148
    Greenville, SC 29616
    864-248-6029
    Rocky.rogers@momarlaw.com
    *Attorneys for Progressive Mountain Insurance Co.*